UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| RODOLFO PRIMERO, ) | |
| ) | |
| Plaintiff, ) | Case  No. 12-1820 AJW |
| ) | |
| v. ) | MEMORANDUM OF DECISION |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| COMMISSIONER OF THE SOCIAL ) | |
| SECURITY ADMINISTRATION, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

Plaintiff filed this action seeking reversal of the decision of defendant, the Commissioner of the Social Security Administration (the "Commissioner"), denying plaintiff's application for supplemental security income benefits. The parties have filed a Joint Stipulation ("JS") setting forth their contentions with respect to each disputed issue.

**Administrative Proceedings**

The parties are familiar with the procedural facts, which are summarized in the Joint Stipulation. [See JS 2]. Plaintiff alleges that he became disabled on July 1, 2006 at the age of 37 due to back and leg pain from a work-related low back injury. [Administrative Record ("AR") 33, 51-54, 118-124, 160-161]. In a May 24, 2011 written hearing decision that constitutes the final decision of the Commissioner, an administrative law judge ("ALJ") found that plaintiff had a severe back impairment that restricted him to light work and precluded performance of his past relevant work, but that his residual functional capacity

did not preclude performance of alternative work available in significant numbers in the national economy. [AR 28-34].

## Standard of Review

The Commissioner's denial of benefits should be disturbed only if it is not supported by substantial evidence or is based on legal error. Stout v. Comm'r, Social Sec. Admin., 454 F.3d 1050, 1054 (9th Cir. 2006); Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). "It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (internal quotation marks omitted).  The court is required to review the record as a whole and to consider evidence detracting from the decision as well as evidence supporting the decision. Robbins v. Social Sec. Admin, 466 F.3d 880, 882 (9th Cir. 2006); Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999).  "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas, 278 F.3d at 954 (citing Morgan v. Comm'r of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999)).

## Discussion

**Treating source opinion**

Plaintiff contends that the ALJ failed to articulate specific, legitimate reasons based on substantial evidence for rejecting the opinion of plaintiff's workers' compensation treating orthopedic surgeon, John Carr, M.D.

Plaintiff testified that he suffered a back injury in June 2000 during a work-related assault. [AR 51-52, 312-313]. He received treatment at Kaiser Permanente, where his diagnoses included disc herniation, sciatica, low back strain, and acute right L5 radiculopathy. He was prescribed physical therapy and

medications, including Soma[1], Vicodin[2], and Naprosyn[3]. The possibility that plaintiff might need surgical decompression was noted. Plaintiff was advised to remain off work for a period of time and received state disability benefits. He resumed working in 2002 and continued to do so until his alleged onset of disability in July 2006. [AR 51-52, 125-141, 184, 299, 312-313, 252-283].

Plaintiff initially sought treatment from Dr. Carr in September 2000 for exacerbation of his symptoms. Dr. Carr conducted an examination and ordered an MRI, which showed "large disc herniation" at L5-S1 and S1 nerve root compression. [AR 301, 319-320]. Plaintiff returned to Dr. Carr for follow-up in February 2001. [AR 298-304, 312-321]. Dr. Carr diagnosed plaintiff with "chronic musculoligamentous sprain of the lumbosacral spine with associated 1.2 centimeter right paracentral disc herniation of the extrusion variety, with inferior extension displacing the right S1 nerve root" and "clinical possible right pyriformis syndrome." [AR 301]. He prescribed a course of physical therapy, chiropractic treatment, and Vicodin and Soma for pain. [AR 299, 301-302, 315]. Dr. Carr concluded that plaintiff had reached "maximum improvement from conservative treatment" in Feburary 2001 and therefore classified plaintiff's condition as "permanent and stationary."[4] [AR 301-302]. Dr. Carr opined that plaintiff was a candidate for

---

[1] Soma (carisoprodol) is a muscle relaxant that is used to relieve pain and discomfort caused by strains, sprains, and other muscle injuries. See United States National Library of Medicine and National Institutes of Health, MedlinePlus website, available at http://www.nlm.nih.gov/medlineplus/druginfo/meds/a682578.html (last accessed Jan. 30, 2013).

[2] Vicodin is the brand name for a combination of hydrocodone, an opioid pain medicine, and the analgesic acetaminophen. Vicodin is used for the relief of moderate to moderately severe pain. See Abbott Laboratories, Vicodin website, at http://www.vicodin.com/patient/index.cfm (last accessed Jan. 30, 2013).

[3] Naprosyn (naproxen) is a nonsteroidal anti-inflammatory drug used to relieve pain, tenderness, swelling, and stiffness caused by arthritis, bursitis, tendinitis, and pain from other causes. See United States National Library of Medicine, PubMed Health website, at http://www.ncbi.nlm.nih.gov/pubmedhealth/PMHT0011337 (last accessed Jan. 30, 2013).

[4] "[A] disability is considered permanent after the employee has reached maximum medical improvement or his or her condition has been stationary for a reasonable period of time. It does not mean total inability to work, but is an impairment of earning power caused by a mental or physical condition." Edgar v. W.C.A.B., 65 Cal.App.4th 1, 10 (1998) (internal quotation marks and citations omitted); see Cal.Code Regs., tit. 8, § 10152 ("A disability is considered permanent when the employee has reached maximal medical improvement, meaning his or her condition is well stabilized, and unlikely to change substantially in the next year with or without medical treatment.").

laminectomy surgery and therefore requested—but did not receive—authorization to refer plaintiff to a neurosurgeon [AR 202, 300].

The ALJ stated that "the record does not include any treatment notes or medical evidence from 2002 until the claimant sought care again in December of 2008" from Dr. Carr, but that is incorrect. [AR 31]. Workers' compensation reports in the record indicate that plaintiff received follow-up treatment from Dr. Carr for his lumbar spine condition in June 2003, March 2005, May 2006, February 2008, and August 2008. [AR 200-228].

Plaintiff returned to Dr. Carr in June 2003 for exacerbation of his lumbar symptoms. [AR 200-211]. Dr. Carr's diagnoses and opinion were unchanged. He noted that plaintiff wished to "temporize with respect to undergoing" a laminectomy. [AR 204]. He prescribed Soma and Feldene[5] for pain, and Zantac (ranitidine) to prevent gastritis. [AR 204]. Dr. Carr opined that plaintiff had a "lumbosacral spine disability precluding substantial work activities and, in addition, prolonged sitting and prolonged standing." [AR 204].

Plaintiff returned to Dr. Carr on May 30, 2006. Dr. Carr said that he had last seen plaintiff in March 2005, but there is no corresponding medical report in the record. Dr. Carr also noted that plaintiff had settled his workers' compensation case with a provision for future medical care. [AR 216-218]. Dr. Carr's diagnoses and opinion were unchanged. He prescribed Vicodin, Soma, Naprosyn, and ranitidine. [AR 217].

Plaintiff complained of exacerbation of symptoms on follow-up visits to Dr. Carr in February 2008, August 2008, December 2008, March 2009, and April 2010. [AR 31, 219-228, 284-291]. The ALJ summarized the last three of those reports, which are consistent with the reports from February 2008 and August 2008 reports, and also discussed assessment forms submitted by Dr. Carr. [AR 31-32]. The ALJ noted Dr. Carr's diagnosis of lumbosacral spine sprain with disc herniation and his findings of positive straight-leg raising tests of 45 to 50 degrees on the right and 45 to 60 degrees on the left.[6] [AR 31, AR 212-

---

[5] Feldene, a nonsteroidal anti-inflammatory drug, is indicated for acute or long-term use in the relief of signs and symptoms of osteoarthritis and rheumatoid arthritis. Physicians' Desk Reference 1965-1966 (50th ed. 1996).

[6] A positive Lasegue or straight leg raising test (pain on straight leg raising) produces pain in the sciatic nerve and is significant for compression of the L4-L5 or L5-S1 spinal nerve roots. 2 Dan J. Tennenhouse, M.D., J.D., F.C.L.M., Attorneys' Medical Deskbook 4th § 18:4 (updated 2012).

4

230, 284-291)]. The ALJ noted that Dr. Carr recommended epidural injections and considered plaintiff a candidate for surgery, and that on April 13, 2010, Dr. Carr opined that plaintiff was "at less than sedentary level of disability for Social Security purposes. His disability has persisted for over a year." [AR 31, 287]. The ALJ further noted that Dr. Carr completed a physical residual functional capacity ("RFC") questionnaire in August 2010 stating that plaintiff could sit and stand for only 10 minutes at a time, sit, stand, and walk for less than two hours total in an eight-hour day, and occasionally lift and carry less than ten pounds. [AR 31, 335-336].

The ALJ rejected Dr. Carr's April 2010 opinion that plaintiff could perform less than sedentary work because that "opinion appears reflective of a position of 'advocate' for the patient. Moreover, the issue of whether a claimant is 'disabled' is reserved to the Commissioner." [AR 32]. The ALJ rejected Dr. Carr's August 2010 RFC assessment "because it is not supported by the objective medical evidence, or [by] treatment notes in the record," and also is "inconsistent with the claimant's report that he is able to walk for 20 to 30 minutes at a time." [AR 32]. The ALJ credited the March 2011 opinion of the Commissioner's consultative orthopedic surgeon, J. Pierce Conaty, M.D., who concluded that plaintiff had degenerative lumbar disc disease at the L5 level and retained the RFC for light work. [AR 322-332].

A treating physician's opinion is not binding on the Commissioner with respect to the existence of an impairment or the ultimate issue of disability. Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001). However, a treating physician's medical opinion as to the nature and severity of an individual's impairment is entitled to controlling weight when that opinion is well-supported and not inconsistent with other substantial evidence in the record. Edlund v. Massanari, 253 F.3d 1152, 1157 (9th Cir. 2001); Holohan v. Massanari, 246 F.3d 1195, 1202 (9th Cir. 2001); see 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); Social Security Ruling ("SSR") 96-2p, 1996 WL 374188, at *1-*2. Even when not entitled to controlling weight, "treating source medical opinions are still entitled to deference and must be weighed" in light of (1) the length of the treatment relationship; (2) the frequency of examination; (3) the nature and extent of the treatment relationship; (4) the supportability of the diagnosis; (5) consistency with other evidence in the record; and (6) the area of specialization. Edlund, 253 F.3d at 1157 & n.6 (quoting SSR 96-2p and citing 20 C.F.R. § 404.1527); Holohan, 246 F.3d at 1202.

If a treating source opinion is uncontroverted, the ALJ must provide clear and convincing reasons,

supported by substantial evidence in the record, for rejecting it. If contradicted by that of another doctor, a treating or examining source opinion may be rejected for specific and legitimate reasons that are based on substantial evidence in the record. Batson v. Comm'r, Soc. Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004); Tonapetyan, 242 F.3d at 1148-1149; Lester v. Chater, 81 F.3d 821, 830-831 (9th Cir. 1995).

The ALJ's reasons for rejecting Dr. Carr's treating opinion in favor of that of Dr. Conaty were not clear and convincing. The ALJ apparently overlooked several treatment reports from Dr. Carr dating from June 2003 through August 2008, and this oversight seems to have negatively influenced his evaluation of Dr. Carr's disability opinions. For example, the ALJ characterized Dr. Carr's April 2010 opinion as "advocacy" on plaintiff's behalf, and he also concluded that Dr. Carr's treatment notes did not adequately support his disability opinions. If plaintiff had seen Dr. Carr only three times during the eight-year period before Dr. Carr rendered his opinion, as the ALJ incorrectly surmised, that might have been a legitimate ground for questioning Dr. Carr's credibility. As the record stands, however, Dr. Carr treated plaintiff eight times during that period, a material difference. See, e.g., Ghokassian v. Shalala, 41 F.3d 1300, 1303 (9th Cir. 1994) (holding that the conclusions of a physician who treated the claimant twice in fourteen months were entitled to deference). Because he overlooked some of Dr. Carr's treatment records, the ALJ did not properly consider the relevant factors, including the nature, extent, and frequency of treatment. See 20 C.F.R. §§ 404.1502, 416.902 (defining "treating source" as a physician who has, or has had, an "ongoing treatment relationship" with the claimant, and stating that an "ongoing treatment relationship" exists if "the nature and frequency of the treatment is typical for [the claimant's] condition); 20 C.F.R. §§ 404.1527(c), 416.927(c) (explaining that treating sources are likely to be most able to provide a "detailed, longitudinal picture" of a claimant's medical impairments, and explaining that the length, frequency, nature and extent of treatment are weighed in evaluating treating source opinions).

The ALJ also rejected Dr. Carr's opinion because it was not "supported by the objective medical evidence . . . ." [AR 32]. When an ALJ concludes that "medical opinions are not supported by sufficient objective findings," he "must do more than offer his own conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." Regennitter v. Comm'r of the Social Sec. Admin., 166 F.3d 1294, 1298 (9th Cir. 1999). It appears that the ALJ may have concluded that objective support for Dr. Carr's opinion was lacking because he failed to consider all of Dr. Carr's treatment

6

reports, but in any event the ALJ did not adequately explain why he concluded that the objective medical evidence did not adequately support Dr. Carr's opinion.

The ALJ relied on the opinion of examining orthopedist Dr. Conaty whose objective and clinical findings are similar to those made by Dr. Carr. Dr. Conaty observed that plaintiff's lumbar range of motion was limited. "Fabere" test was positive bilaterally, right moreso than left.[7] Achilles reflex was somewhat abnormal. [AR 325]. Plaintiff had a positive seated and supine straight leg raising test bilaterally; however, Dr. Conaty also noted that plaintiff's supine straight leg raising test was "a positive Waddell's sign."[8] [AR 325]. Dr. Conaty obtained x-rays "demonstrat[ing], at L5, moderately severe disc space narrowing, with lipping and spurring and associated facet arthrosis, consistent with single-level degenerative disc disease, lumbar." [AR 325]. Dr. Carr did not obtain x-rays. The only diagnostic test he relied on was plaintiff's September 2000 MRI. Nonetheless, the x-rays obtained by Dr. Conaty appear to be consistent with the September 2000 MRI findings, in that both are positive for lumbar disc disease at the L5 level.

"When an examining physician relies on the same clinical findings as a treating physician, but differs only in his or her conclusions, the conclusions of the examining physician are not 'substantial evidence.' . . . By contrast, when an examining physician provides 'independent clinical findings that differ from the findings of the treating physician," such findings are "substantial evidence." Orn v. Astrue 495 F.3d 625,

---

[7] "Fabere" stands for flexion, abduction, external rotation and extension, and a positive Fabere sign may indicate a hip joint disorder. 2 Dan J. Tennenhouse, M.D., J.D., F.C.L.M., Attorneys' Medical Deskbook 4th § 18:4 (updated 2012).

[8] Waddell signs are a eight clinical findings that are used to evaluate a patient's complaints of back pain. A positive Waddell sign

> is caused by non-anatomical (functional) factors and implies that the back pain has no physical cause. One or two of these signs may arise from patient anxiety or eagerness to cooperate. Three or more are usually considered sufficient to make a diagnosis of functional disorder or deliberate deception (malingering) and to rule out physical abnormality.

2 Dan J. Tennenhouse, M.D., J.D., F.C.L.M., Attorneys' Medical Deskbook 4th § 18:4 (updated 2012).

632 (9th Cir. 2007). Dr. Conaty's clinical findings were not identical to those of Dr. Carr, but they were very similar. Therefore, Dr. Conaty's conclusions are not substantial evidence supporting the ALJ's rejection of Dr. Carr's opinion or the ALJ's finding that plaintiff retains the RFC for light work.

The only other reason given by the ALJ for his evaluation of Dr. Carr's opinion—that it was inconsistent with plaintiff's self-reported ability to stand and walk—is not sufficient, standing alone, to justify rejecting a treating source opinion. See generally Edlund, 253 F.3d at 1157; Holohan, 246 F.3d at 1202.

For these reasons, the ALJ did not articulate clear and convincing reasons for rejecting Dr. Carr's opinion as to plaintiff's physical functional capacity.[9]

**Remedy**

The choice whether to reverse and remand for further administrative proceedings, or to reverse and simply award benefits, is within the discretion of the court. See Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir.) (holding that the district court's decision whether to remand for further proceedings or payment of benefits is discretionary and is subject to review for abuse of discretion), cert. denied, 531 U.S. 1038 (2000). The Ninth Circuit has adopted the "Smolen test" to determine whether evidence should be credited and the case remanded for an award of benefits:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Harman, 211 F.3d at 1178 (quoting Smolen v. Chater, 80 F.3d 1273, 1292 (9th Cir. 1996)). Where the Smolen test is satisfied with respect to the evidence in question, "then remand for determination and payment of benefits is warranted regardless of whether the ALJ might have articulated a justification for rejecting" the improperly discredited evidence. Harman, 211 F.3d at 1179; Varney v. Sec'y of Health & Human Servs., 859 F.2d 1396, 1400-1401 (9th Cir. 1988).

---

[9] The ALJ did not err in rejecting Dr. Carr's opinion as to emotional or psychological limitations. [See, e.g., AR 293]. The ALJ found no severe mental impairment, and plaintiff has neither argued nor shown that the ALJ's decision in that respect is erroneous or not supported by substantial evidence.

The appropriate remedy in this case is a remand for further administrative proceedings. Although the ALJ erred in evaluating Dr. Carr's opinion, this was at least partly due to what seems to have been an inadvertent failure to consider some of the treatment reports from Dr. Carr. Because those reports are material and there is no indication they were deliberately disregarded, the ALJ should be permitted to consider them and issue a new decision with appropriate findings.[10]

Even if Dr. Carr's opinion as to plaintiff's physical functional limitations is entitled to controlling weight, it is not absolutely clear that a finding of disability would be required. See SSR 96-9p, 1996 WL 374185, at *1-*2 (stating that "a finding that an individual has the ability to do less than a full range of sedentary work does not necessarily equate with a decision of 'disabled,'" especially for individuals under the age of 50). See Bunnell v. Barnhart, 336 F.3d 1112, 1115-1116 (9th Cir. 2003) (applying the Smolen test to hold that while the ALJ did not properly reject the opinions of the treating physicians or the claimant's subjective complaints and lay witness testimony, several "outstanding issues" remain to be resolved, including whether, according to a vocational expert, there was alternative work the claimant could perform).

Moreover, Dr. Carr's opinion as to the date of onset of disability is not necessarily entitled to the same degree of deference as his opinion about plaintiff's functional abilities. Dr. Carr first opined that plaintiff was disabled for social security disability purposes in April 2010, when he said that plaintiff was at a "less than sedentary" level and his "disability had persisted for over a year." [AR 287]. Just a few months later, Dr. Carr completed a form indicating that plaintiff had exertional and non-exertional limitations limiting plaintiff to less than sedentary work, but giving no indication how long those limitations had persisted. Then, in August 2011, Dr. Carr completed another assessment form, with no new clinical or objective findings, indicating that plaintiff had a less than sedentary functional capacity since July 5, 2006. [AR 336]. Although plaintiff alleged an onset date of July 1, 2006, he also stated in his disability report that he stopped working on that date because he "was fired," and that his low back injury did not cause him to work fewer hours, change his job duties, or make any job-related changes in his attendance,

---

[10] This disposition makes it unnecessary to consider plaintiff's contentions regarding the ALJ's credibility finding. The ALJ's credibility analysis depended in part upon his flawed analysis of the medical evidence, and therefore it cannot stand. On remand, the ALJ must reevaluate plaintiff's credibility in light of the record as a whole.

help needed, or employers. [AR 161]. On remand, the ALJ should elicit additional testimony from plaintiff regarding the onset of disability and obtain the assistance of a medical expert to determine the date of onset of any period of disability. See Armstrong v. Comm'r of the Soc. Sec. Admin., 160 F.3d 587, 590 (9th Cir. 1998) ("SSR 83-20 requires the administrative law judge to call upon the services of a medical advisor and to obtain all evidence which is available to make the determination" when the date of onset of disability must be inferred).

**Conclusion**

For the reasons stated above, the Commissioner's decision is **reversed**, and the case is **remanded** for further administrative proceedings consistent with this memorandum of decision.

**IT IS SO ORDERED.**

January 31, 2013

_____
ANDREW J. WISTRICH
United States Magistrate Judge